IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33769-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANTHONY J. TUDOR, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Anthony Tudor appeals his conviction for first degree murder, arguing the trial court violated his constitutional right to present a defense by excluding "other suspect" evidence. We affirm.

## FACTS

Mr. Tudor and his mother's boyfriend, Richard Klepacki, were arrested for shooting and killing a neighbor.[1] The State's theory was that Mr. Tudor and Mr. Klepacki went to the victim's home, kicked open the door, and shot him. Originally, the State's theory appeared to be that Mr. Tudor was the shooter. After the evidence was

---

[1] Mr. Klepacki's case was severed from Mr. Tudor's and is not currently before the court.

presented at trial, the State argued that Mr. Klepacki was the shooter.[2]

Mr. Tudor proffered an alibi defense. He testified he was home with his mother at the time of the shooting. In addition, the defense raised a claim of misidentification. Going in to trial, the defense theory was an individual named Andrew Lankford was the shooter.

The trial court afforded Mr. Tudor ample opportunity to present evidence implicating Mr. Lankford. The defense elicited testimony that Mr. Lankford had been at the victim's house the day of the shooting and was originally considered a suspect. Law enforcement testified to suspicious footprints left near the crime scene that appeared to lead to Mr. Lankford's house. Mr. Lankford's cell phone records indicated he may not have been at the residence of his proffered alibi witness the entire evening of the shooting.

Apart from these generalized suspicions surrounding Mr. Lankford, the defense elicited testimony suggesting the shooter looked somewhat similar to Mr. Lankford. The lone eyewitness to the shooting described the shooter as having a dark complexion and dark eyes. Additional witnesses described the men running from the scene as young,

---

[2] The revised theory was based on witness testimony that Mr. Tudor had confessed to the crime and explained he stood by while Mr. Klepacki shot the victim.

probably in their 20s. While these descriptions were consistent with Mr. Lankford, they were not consistent with Mr. Tudor (who is fair) or Mr. Klepacki (who was in his 50s). Mr. Lankford testified as a witness for the State, and the jury could observe whether Mr. Lankford matched the description originally provided of the shooter.

The defense effort to connect Mr. Lankford to the shooting fell short during cross-examination of the eyewitness to the shooting. Defense counsel handed the eyewitness an exhibit, marked 101, and asked if it depicted the shooter. The witness said no. The witness admitted that, during a prior statement, he said the person depicted in the photo "kind of looked like" the shooter. 2 Verbatim Report of Proceedings (VRP) (June 3, 2015) at 239. He also admitted previously telling defense counsel the person in the photo was "probably" the shooter. *Id.* But at the time of trial he refused to identify the individual in the photograph as the shooter.

Defense counsel moved to admit the photo. The State objected on the grounds of relevance. The objection was sustained. Subsequent testimony revealed the individual depicted in exhibit 101 was Andrew Lankford. However, the photo was never admitted into evidence.

During a colloquy outside the presence of the jury, the court explained the photo was not admissible because the defense had not established a sufficient basis to conclude

3

that it depicted the shooter. In addition, the court was concerned that defense counsel had improperly informed the jury there had been testimony indicating Mr. Lankford was the shooter. This was contrary to the evidence. The court explained the defense was welcome to try to present evidence tying Mr. Lankford to the shooting. However, defense counsel was admonished not to refer to facts outside the record. "We're going to talk about what the evidence actually is," the court warned, "and not what we think it is or what we hope it to be." 2 VRP (June 4, 2015) at 360.

Prior to summation, defense counsel explained he did not intend to argue that any particular person was the shooter, only that the person described by the eyewitness could not have been Mr. Tudor. The court found this fair and did not place any restrictions on closing argument, other than that counsels' arguments must be based on the evidence. The court reiterated it would not allow exhibit 101 to be admitted to the jury.

The jury returned a verdict finding Mr. Tudor guilty. He appeals.

## ANALYSIS

Mr. Tudor contends the trial court violated his constitutional right to present a defense by excluding evidence that Mr. Lankford committed the murder. In general, other suspect evidence should be admitted if relevant and not overly prejudicial. *State v. Franklin*, 180 Wn.2d 371, 378-79, 325 P.3d 159 (2014). Relevance is established if

4

proffered evidence tends to connect someone other than the defendant with the crime. *Id.* at 381. Ultimately, the test for admissibility is similar to that set out by ER 403. *Id.* at 380. A trial court's decision to exclude other suspect evidence is reviewed for abuse of discretion. *State v. Thomas*, 150 Wn.2d 821, 856-61, 83 P.3d 970 (2004).

There was no abuse of discretion in this case. The trial court did not thwart Mr. Tudor's efforts to present other suspect evidence. The problem for Mr. Tudor was not the restrictions placed on him by the court. It was that the evidence did not turn out in his favor. The only evidence excluded by the trial court was the photograph of Mr. Lankford that had been shown to the eyewitness. The trial court excluded this photograph both because the defense failed to tie it to the shooter and because defense counsel improperly referred to the person in the photograph as the shooter. This was well within the court's discretion.[3]

Even if Mr. Tudor could show the trial court erred in refusing to admit the photograph, there was no prejudice. In cases of constitutional error, the burden falls on

---

[3] Mr. Tudor suggests the trial court also erred by restricting the scope of his closing argument. As set forth in the recitation of facts, we disagree with this characterization of the record. Mr. Tudor never sought to present argument identifying Mr. Lankford as the shooter. Mr. Tudor's proffer that he would present generalized argument regarding other suspects was not made in response to any court rulings. Accordingly, there is no basis to complain that the court imposed improper restrictions.

5

the State to prove erroneously excluded evidence was harmless beyond a reasonable doubt. *Franklin*, 180 Wn.2d at 382-83. This is readily met. The jury learned the eyewitness had previously said the individual depicted in the photograph was "probably" the shooter. 2 VRP (June 3, 2015) at 239. Further testimony revealed the photograph in question depicted Andrew Lankford. Finally, the jury was able to see Mr. Lankford during his testimony and judge for themselves whether he appeared similar to the description provided by the eyewitness. Admission of the photograph would not have been of any additional assistance. The exclusion was harmless.

CONCLUSION

Mr. Tudor's judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Korsmo, J.                                Siddoway, J.

6